# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 17-74

MIRLA GONZALEZ MARTINEZ

VERSUS

DAVID ANDREW MARTINEZ

**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C-86720, DIV. B
HONORABLE LALA B. SYLVESTER, DISTRICT JUDGE

**********

## VAN H. KYZAR
## JUDGE

**********

Court composed of Sylvia R. Cooks, Shannon J. Gremillion, and Van H. Kyzar, Judges.

**AFFIRMED.**

**Andrew B. Freyer**
**Law Office of Bryce Denny, L.L.C.**
**209 Polk Street**
**Mansfield, LA 71052**
**(318) 871-5007**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **David Andrew Martinez**

**Robert C. Owsley**
**Murchison and Murchison, L.L.C.**
**P.O. Box 226**
**Natchitoches, LA 71458-0226**
**(318) 352-2302**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Mirla Gonzalez Martinez**

**KYZAR, Judge.**

The defendant, David Andrew Martinez, appeals from a trial court judgment denying his motion to modify his child support obligation. For the following reasons, we affirm.

## DISCUSSION OF THE RECORD

David Andrew Martinez and Mirla Gonzalez Martinez were married on May 19, 2004. The parties have one child, Andrew Allen Martinez, who was born on December 15, 2010. On February 5, 2014, Mirla filed a petition for divorce, in which she requested that she and David be granted joint custody of their son, with her being designated as the domiciliary parent. David answered and filed a reconventional demand in which he also requested that joint custody of their son be awarded him and Mirla, with him being designated the domiciliary parent. Both parties alleged the need for child support from the opposing party. An interim judgment was rendered on May 1, 2014, which awarded joint custody of the child to both parties, named Mirla as the domiciliary parent, subject to David's reasonable visitation rights, and ordered David to pay child support of $188.00 on the first and fifteenth of April and May 2014.

Thereafter, the parties entered into a consent judgment in open court on July 22, 2014. The parties agreed that they would share joint custody of their son, with Mirla being designated the domiciliary parent, subject to David's visitation rights. They further agreed that David would pay child support to Mirla in the amount of $750.00 per month, beginning on August 1, 2014. A written judgment was rendered by the trial court and filed of record on January 22, 2015. A judgment of divorce was further rendered by the trial court on April 14, 2015.

On August 2, 2016, David moved to modify his child support obligation due to a significant change in his circumstances caused by his change of employment

from an associate professor to a real estate agent. He stated that as of September 1, 2015, he was no longer employed by the University of Texas – Pan American, but was currently residing in Michigan, where his gross monthly income was based solely on the commissions he earned selling real estate. He claimed that he experienced a drastic decrease in his income as a result, which warranted a modification in his child support obligation. He further requested that Mirla be ordered to court to show cause why the child support obligation should not be set according to Louisiana's uniform child support guidelines.

In response to this motion, Mirla presented her child support award to the State of Louisiana, Department of Children and Family Services, which filed an ex parte motion to have the trial court's January 22, 2015 child support order transferred to the state for enforcement and modification pursuant to La.R.S. 46:236.2(A)(1). An order transferring the matter to the state was issued by the trial court on September 19, 2016. The state then filed an ex parte motion for entry of an immediate income assignment pursuant to La.R.S. 46:236.3. This order was issued by the trial court on September 22, 2016.

Following an October 12, 2016 hearing, the trial court denied David's motion to modify his child support obligation, finding that he was voluntarily underemployed. A written judgment was rendered by the trial court on October 24, 2016. It is from this judgment that David appeals.

David raises three assignments of error on appeal:

1. The trial court erred in determining that Mr. Martinez was [v]oluntarily underemployed.

2. The trial court erred in declining to reduce Mr. Martinez's child support obligation to a level consistent with the income offered by Arkansas State University.

3. The trial court exceeded its authority to question Mr. Martinez.

2

# OPINION

The law and jurisprudence pertaining to modification of child support awards was set out in *Bonnecarrere v. Bonnecarrere*, 09-1647, pp. 9-10 (La.App. 1 Cir. 4/4/10), 37 So.3d 1038, 1045-46, *writ denied*, 10-1639 (La. 8/11/10), 42 So.3d 381, as follows:

> The party seeking modification of a child support award bears the burden of proving that a material change in circumstances has occurred since the time of the previous award and the time of the rule for modification of the award. La. R.S. 9:311(A); *see* La. C.C. art. 142; *see also Barton v. Barton*, 05-1190, p. 5 (La.App. 1st Cir.6/9/06), 938 So.2d 779, 781. Louisiana jurisprudence distinguishes between voluntary and involuntary changes in circumstances. An involuntary change in circumstances results from fortuitous events or other circumstances beyond a person's control, such as loss of one's position or illness and may support a modification of child support. A voluntary change in circumstances, however, generally does not justify a reduction in the support obligation. When a parent voluntarily terminates his or her employment upon which the original support obligation was based, the child support obligation may be reduced if the obligor parent can show that: (1) a change in circumstances has occurred; (2) the voluntary change in circumstances is reasonable and justified; (3) the parent is in good faith and not attempting to avoid his or her alimentary obligation; and (4) the action will not deprive the child of continued reasonable financial support. *Strange v. Strange*, 42,318, p. 7 (La.App. 2nd Cir.6/20/07), 960 So.2d 1223, 1228-1229.

> The trial court is afforded wide discretion in determining whether the facts of a particular case warrant modification of an obligor parent's child support obligation. Accordingly, such determinations will not be disturbed on appeal absent a clear abuse of discretion. *See Folse v. Folse*, 01-0946, p. 4 (La.App. 1st Cir.5/10/02), 818 So.2d 923, 925; *Strange*, 42,318 at p. 8, 960 So.2d at 1229.

David testified that he currently lives in Milan, Michigan, where he is licensed to sell real estate and health insurance. He said that he has only had these licenses for five and six months, respectively, and that previously, he received weekly unemployment benefits of $428.00 for four and one-half months. After these benefits ran out, David testified that he lived off of $12,000.00 he realized from selling his home in Texas. He stated that he is now paid strictly by

3

commission and that he will soon receive $3,500.00 from a house closing. He stated that his expenses in Michigan include his vehicle insurance, food, office fees, and a $1,000.00 per year realtors' fee. He said that he lives with his mother and does not pay rent, although he does help with the utilities. He stated that he is paying a $13,000.00 credit card bill from his and Mirla's marriage. Additionally, he admitted that he has a retirement account in Texas, with a balance of $167,000.00, and an inactive retirement account in another state, which has a balance of approximately $5,000.00.

Prior to moving to Michigan, David testified that he was employed as a tenured associate professor of graphic design at the University of Texas-Pan American (UTPA), where he earned approximately $60,000.00 per year. He said that he has taught for fourteen years at four or five universities. David testified that both he and Mirla were teaching at UTPA when they decided to move to Natchitoches and teach at Northwestern State University (NSU). He stated that he taught at NSU for one semester and then returned to UTPA, while waiting for NSU to offer him a permanent position. While teaching at NSU, he said that he taught online courses for UTPA, with the approval of his dean. However, when he returned to UTPA, David stated that he lost his position there because he failed to fill out paperwork in regards to the number of hours he worked. It was at this time that he also received notice that Mirla, who was still teaching at NSU, had filed for divorce. He stated that NSU never offered him a position.

After he was let go by UTPA, David testified that he applied for teaching positions at approximately twenty universities, including UTPA. He stated that he was offered a one-year position at Arkansas State University for $42,000.00, but that he declined the position because it was not a tenured position and was only for a one year contract at the time it was offered. Instead, David testified that he

4

decided to move to Michigan in order to spend time with his father, who had lung cancer. Although he admitted that he would have been closer to his son had he taken the position in Arkansas, he said that he felt that it was more important for him to be with his father in Michigan. He stated that he moved in with his parents and helped care for his father, who passed away a week prior to the hearing.

Although he had no previous experience selling either real estate or health insurance, David testified that he decided that he wanted to be his own boss. He stated that he did not want to run the risk that he would build up a program and then be dropped from it after he acquired tenure, as happened at UTPA.

At the close of evidence, the trial court denied David's motion due to the fact that he left a tenured position with UTPA for a speculative position with NSU, and then after losing his position at UTPA, he turned down a position with Arkansas State University. The trial court held that even though the school offered David a non-tenured track position for one year at a lower salary, this position could have led to further employment based on his job performance. It further held that David's child support obligation would remain at $750.00 per month.

After reviewing the record, we find that the trial court did not abuse its discretion by finding that David was voluntarily underemployed and that his underemployment was neither reasonable nor justified. Although David's loss of his position with UTPA was involuntary, it resulted from his failure to fill out paperwork required by UTPA prior to or during his one-semester position at NSU. *See Anderson v. Anderson*, 11-864 (La.App. 5 Cir. 5/31/12), 96 So.3d 1278. Moreover, he turned down a teaching position paying $42,000.00, because it was based on a one year contract and was a non-tenured position, and chose instead to move fifteen hours away from his son and live off of unemployment benefits while he pursued real estate and insurance licenses. Based on the foregoing, we affirm

5

the trial court's judgment denying David's motion to modify his child support obligation and maintaining his child support payment at $750.00 per month. Accordingly, we find no merit in his first and second assignments of error.

We further find no merit in David's third assignment of error.

Under Louisiana Code of Evidence Article 614, a judge may question witnesses. Generally, a judge, in order to maintain the impartiality which proper trial technique demands, should be very careful, not only as to the number and type of questions propounded by him to witnesses, but also as to the manner in which they are propounded. *Texas Pacific-Missouri Pacific Terminal R. of New Orleans v. Welsh*, 179 F.2d 880 (5th Cir.1950); *Patin v. DeStevens*, 415 So.2d 1011 (La.App. 4th Cir.1982). In order to adjudicate a matter fairly, the trial court is well within the scope of its duty when it initiates questions from the bench. La. C.C.P. art. 1631; *Midyett v. Midyett*, 32,208, (La.App. 2nd Cir.9/22/99), 744 So.2d 669; *LaPierre v. Gibson*, 420 So.2d 990 (La.App. 4th Cir.1982), *writ denied*, 423 So.2d 1150 (La.1982); *Williams v. Western Preferred Casualty Insurance Company*, 465 So.2d 191 (La.App. 3rd Cir.1985). As noted by the Third Circuit in *Williams*:

> [I]n a bench trial, as in this one, the dangers inherent in questions from the bench are greatly mitigated because there is no jury to confuse or mislead. The trial judge was merely enabling himself to better understand the crucial testimony of the claimant.

*Ledet v. Ledet*, 04-509, pp. 4-5 (La.App. 5 Cir. 3/29/05), 900 So.2d 986, 988 (quoting *Williams v. Western Preferred Cas. Ins. Co.*, 465 So.2d 191, 194 (La.App. 3 Cir. 1985)).

Although David claims that the trial court exceeded its authority by asking him thirty-one questions as opposed to the thirty questions asked by his own counsel, we find, by our own count, that the trial court asked approximately fifteen questions. The difference in numbers arises from the fact that David appeared at the hearing via Skype from Michigan and experienced difficulty in hearing the trial court's questions, which required the trial court to ask the same questions multiple times. No matter the difference in the number of questions, the trial judge, in this bench trial, certainly acted within her discretion by asking questions in order to clarify the evidence in her mind. *State v. Layssard*, 310 So.2d 107 (La.1975).

6

Accordingly, we find no merit in this assignment of error.

## DISPOSITION

Based on the foregoing, the judgment of the trial court is affirmed. The costs of this appeal are assessed to David Andrew Martinez.

**AFFIRMED.**