# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 18-408

JESSICA LANGLEY THOMAS

VERSUS

CARROLL F. THOMAS, II

************

**APPEAL FROM THE**
**FIFTEENTH JUDICIAL DISTRICT COURT**
**PARISH OF VERMILION, NO. 99997**
**HONORABLE CHARLES G. FITZGERALD, DISTRICT JUDGE**

************

**SYLVIA R. COOKS**
**JUDGE**
************

Court composed of Chief Judge Ulyssess Gene Thibodeaux, and Sylvia R. Cooks and Marc T. Amy, Judges.

**JUDGMENT VACATED. REMANDED.**

Rachel Moss
2200 Tulane Avenue, Suite 200A
New Orleans, LA  70119
(504) 421-2253
Attorney for Appellant/Defendant
  Carroll F. Thomas, II

Jessica Langley Thomas, In Proper Person
P.O. Box 990
Abbeville, LA 70511-0990
Appellee/Plaintiff

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

Jessica Langley Thomas (Jessica) and Carroll F. Thomas, II (Carroll) entered into a covenant marriage in 1998.[1] They are the parents of three minor children. Jessica filed for Divorce alleging grounds under La.Civ.Code art. 102.[2] The couple was awarded joint legal custody of the three children and Jessica was made the domiciliary parent with Carroll enjoying visitation. Following a hearing officer conference in 2015 the hearing officer made recommendations, neither party objected, and the recommendations became the judgment of the court duly signed by the trial court. In 2017 Jessica filed a rule for modification of child support asserting a change of circumstances occurred since the previous support order, namely, that the cost of private schooling for the children was not included in the prior child support order. The parties agree that the issue of private school tuition was not previously addressed because they represented to the hearing officer the cost

---

[1]      The Covenant Marriage Act, La.R.S. 9:272 *et seq.,* was enacted by 1997 La. Acts No. 1380, effective July 15, 1997. . .

. . . .

[Louisiana Revised Statutes] 9:308A allows spouses in a covenant marriage to sue each other for "causes of action pertaining to spousal support or the support or custody of a child *while the spouses are living separate and apart, although not judicially separated.*" (Emphasis added.) Moreover, La. R.S. 9:293 makes spouses in a covenant marriage "subject to all the laws governing married couples generally and to the special rules governing covenant marriages."

Additionally, La. R.S. 9:291 expressly preserves to parties of a covenant marriage the right to sue on causes of action pertaining to contracts or arising out of the civil code provisions governing matrimonial regimes, "*and for causes of action pertaining to spousal support or the support or custody of a child while the spouses are living separate and apart*" (Emphasis added) (Footnotes omitted).

*Johnson v. Johnson*, 14-564, pp. 4-6 (La. App. 1 Cir. 12/23/14), 168 So.3d 641, 643-45.

[2]      The record reflects no divorce has been granted because neither party has filed pleadings under the proper provisions for a covenant marriage.

had already been paid prior to the hearing. The parties subsequently learned there was actually a balance due on the tuition costs.

Jessica alleged in her current motion that Carroll agreed to pay his portion of the children's tuition costs but failed to honor his agreement. She also alleged arrearages were owed to the school and sought recovery of Carroll's share of arrearages. A hearing officer conference was held. After receiving evidence and testimony from both parties the hearing officer made a written "Recommendation" based on his enumerated findings of fact. That "Recommendation" is dated July 11, 2017. The hearing officer determined that "neither party has the ability to show a change in circumstances of the other party from the incomes attributed at the time of the prior order. As such the modifications sought herein should be made using those prior assessed incomes." The hearing officer also expressly found the following set forth in the "HEARING OFFICER FINDINGS OF FACT:"

> (x) At the time of the prior order the minor children were attending private school, however, the costs of that private schooling were not included in the prior order as it was determined that the tuition for that current year had been paid.

> In fact, the tuition for that year had not been fully paid and the petitioner now seeks to have the private school tuition costs included in the calculation of child support. . . .

> When the parties were living together the minor children attended LeBlanc Elementary until such time as they transitioned at which time they began attending Harvest Time. The father asserts that an award of co-domiciliary status would allow the children to attend school in the North Vermilion School District—an A rated school district. No petition for modification of custody has been filed.

> (x) The gross monthly income of Plaintiff, JESSICA LANGLEY THOMAS, is determined to be $1256.00   30%

> (x) The gross monthly income of Defendant, CARROLL F. THOMAS II, is determined to be $3000.00     70%

> (x) Child support worksheet attached.

2

(x)  Finding that the non-domiciliary party's child support obligation equals or exceeds fifty percent of the total child support obligation, that no arrearages are owed and that the right to claim the dependency deduction(s) would substantially benefit the non-domiciliary party without significantly harming the domiciliary party, the tax dependency deductions are awarded to the non-domiciliary party as set forth in the attached Recommendations.

**FINDINGS OF LAW BASED ON THE PLEADINGS AND FACTS**

Should the court determine that the private school tuition costs should be included in the child support obligation for the two minor children now attending Harvest Time Christian Academy, then: The non-custodial parent, Carroll Thomas, II, be ordered to pay child support of $1319.18 per month, payable ½ by the 1st day of each month and ½ by the 15th day of each month, commencing on the 1st day of July, 2017.

Should the court determine that the private school tuition costs should *not* be included in the child support obligation for the two minor children now attending Harvest Time Christian Academy, then the child support obligation should remain as previously ordered ($893.33)

(x)  That court costs be cast as follows: Deferred to the hearing on this matter.

Neither party filed any objection to the hearing officer recommendation within the delay period provided.  The trial judge signed the Judgment on July 21, 2017, making the hearing officer's recommendation the "lawful order of the Court."  The judgment also provided that court costs would be "deferred to hearing."  Notice of judgment was mailed to both parties on July 24, 2017.  The remaining issue to "determine whether private school tuition should be included in the parties' child support calculation" was set for a rule to show cause hearing on August 1, 2017.

Court minutes reflect that on August 1, 2017, the parties appeared, unrepresented by counsel.  Following a pre-trial conference, the trial court on its own motion continued and re-fixed the matter for trial on August 29, 2017.  The court minutes also show that the rule scheduled for hearing was a:

RULE FOR CHILD SUPPORT MODIFICATION/FOR INCREASE; TO PAY FOR COSTS OF PRIVATE SCHOOL AND/OR PAY PROPORTIONATE SHARE OF COSTS; TO PAY ARREARAGE

3

OWED TO SCHOOL FOR PAST DUE TUITION COSTS TO BE ALLOCATED BETWEEN THE PARTIES IN ACCORDANCE WITH THEIR PROPORTIONATE SHARE OF INCOME; AND FOR ALL COSTS

The minutes also include the representation that "both parties mutually agreed" that the matter be re-fixed and that:

[T]he plaintiff is to exchange all documents with the defendant regarding tuition payments, tuition payment schedules, and professional opinions/letters issued by Stephanie Leleux, Michelle Rupert, and Jackie Braxton, who will be subpoenaed & called as witnesses by the plaintiff; and that both parties will waive formal notice of fixing in this matter. Court costs [are] deferred.

Court minutes dated October 10, 2017 indicate a hearing was held on the rule concerning payment of costs for tuition. Both parties were again unrepresented by counsel. Plaintiff called three witnesses; Michelle Rupert, Lucia Viator and Holly Dotson. The trial judge questioned the witnesses extensively. Jessica did not question the witnesses, expressing her satisfaction with the judge's interrogation of the witnesses. The matter was again continued to October 17, 2017 for day two of the hearing. The court minutes reflect that on this date the parties appeared with Jessica representing herself and attorney Rachel Moss (Moss) representing Carroll. The court heard Jessica's testimony and engaged in discussions on the record with both Jessica and Carroll. The trial court rescinded "any and all stipulations [by both parties]" and continued the matter for day three of the hearing to be set for November 28, 2017.

The court minutes dated November 28, 2017 state that the hearing continued with Jessica recalling herself to the stand for additional direct testimony. Again, Jessica represented herself and Carroll was represented by attorney Moss. Defense counsel objected to any further direct testimony by Jessica. The court "denied" the objection. During her testimony, Jessica introduced exhibits which she labeled as PL-Jessica-1 and 2. These exhibits included: "Jessica's 2016 W-2 Wage and Tax

4

Statement from Blue Agave & Brothers, LLC" and "her 2016 1099 Miscellaneous Income Statement from Ascension Driving Academy d/b/a Lagniappe Lunches." Jessica then called Carroll on cross examination and following this testimony she rested her case. Defense counsel informed the court she had no further evidence or testimony to present and defense rested. The trial court recessed for about thirty minutes, reconvened, and ruled from the bench giving extensive reasons orally for its ruling. The trial court signed a judgment on November 29, 2017 which "Ordered, Adjudged and Decreed that":

> Carroll F. Thomas, II shall pay child support to Jessica Langley Thomas in the monthly amount of One Thousand Four Hundred Forty-Seven Dollars and 14/100 ($1,447.14), payable one-half by the 1st and one-half by the 15th of each month, effective retroactively to May 17, 2017. A Child Support Obligation Worksheet has been attached hereto as **Exhibit 1**.

> [T]he net arrearage amount of $3,572.08, which is now due and owing by Carroll F. Thomas, II to Jessica Langley Thomas as a result of the retroactive effect of the child support award less credits, shall be satisfied as follows: Carroll F. Thomas, II shall pay to Jessica Langley Thomas an extra $50.00 per month payable one-half by the 1st and one-half by the 15th of each month until paid.

> Jessica Langley Thomas shall be allowed to claim the federal and state income tax dependency exemptions for all three minor children for the 2017 tax year and thereafter unless modified by future court order.

> [A]ll costs of court shall be divided equally between the parties.

Despite the fact that the rule for modification was brought to determine *whether the costs of private tuition for two of the minor children should be made part of the child support obligation*[3] the judgment is silent as to any order concerning

---

[3]

By agreement of the parties or order of the court, the following expenses incurred on behalf of the child may be added to the basic child support obligation:

(1) Expenses of tuition, registration, books, and supply fees required for attending a special or private elementary or secondary school to meet the needs of the child.

La.R.S. 9:315.6

the children's continued attendance at Harvest Time Christian Academy, and is silent regarding whether the costs for attending such school is to be made a part of the child support obligation. It appears from the record that the only reason supporting an increase in the amount of monthly child support owed by Carroll would be the increased cost of tuition and that the recited "arrearage" identified as "$3,572.08" is the amount of tuition unpaid by Carroll. Nevertheless, the judgment does not state that the "net arrearage" is for tuition owed.

Defendant appeals the trial court ruling alleging three assignments of error:

1. The trial court erred, as a matter of law, when it conducted a trial *de novo* of all issues when the hearing officer's findings of fact and recommendations were not objected to and became a judgment of the trial court on July 21, 2017.

2. The trial court erred, as a matter of law, when it conducted all of the The (sic) direct examinations of the witnesses that testified on behalf of the plaintiff [including plaintiff].

3.  The trial court erred, as a matter of law, when it added the cost of a home school program to the party's basic obligations based on the evidence presented.

In its oral reasons for judgment the trial court stated that it signed the judgment dated July 21, 2017, in error. The trial court asserted the hearing officer's recommendation could not be a judgment of the court because it left undetermined

---

The official comment to this provision states:

> Prior to 2001 "any expenses" for attending a special or private elementary or secondary school to meet the "particular educational" needs of the child could be added to the basic child support obligation calculated using the guideline tables. Clarifying language was added to Paragraph (1) to specify the types of school expenses--tuition, registration, books and supply fees *required* for attending the school-permitted to be added to the basic child support amount, but the necessity of showing that attendance at the special or private school was required to meet the "particular educational" needs of the child was eliminated. The needs of the child met by the special or private school need not be particular educational needs but may include such needs of the child as the need for stability or continuity in the child's educational program.

La.R.S. 9:315.6, cmt. (2001)

the question of whether the costs of private school tuition would be included in calculating Carroll's support obligation. Defendant asserts this was legal error and maintains the trial court erred as a matter of law in re-trying issues that were already resolved and reduced to judgment. We agree. In *C.G.D. v. M.W.D.*, 00-1492 p. 3 (La.App. 3 Cir. 2/28/01), 782 So.2d 1128, 1130, we held "[t]he trial court was not legally empowered to substitute a judgment which expanded upon the unobjected to recommendations of the hearing officer." In *C.G.D.*, we explained:

> Louisiana Revised Statutes 46:236.5(C)(3)(a) provides that a hearing officer in a child support case "shall act as a finder of fact and shall make recommendations to the court concerning….the [e]stablishment and modification of support." Following a hearing on the merits, the hearing officer is to summarize the findings and make a written recommendation to the court concerning the disposition of the matter. These recommendations function as the proposed judgment. The parties then have the opportunity to contest the hearing officer's findings by the filing of an exception within a particular period of time:
>
>> (6) Any party, within the time and manner established by court rule, may file an exception to the findings of fact or law of the hearing officer. Upon filing of the exception, the court shall schedule a contradictory hearing to be held before the judge who shall accept, reject, or modify in whole or in part the findings of the hearing officer. If the judge in his discretion determines that additional information is needed, he may receive evidence at the hearing or remand the proceeding to the hearing officer.
>>
>> (7) **If no exceptions are filed within the time established by court rule, an order <u>shall</u> be signed by the judge, which <u>shall</u> be a final judgment and be appealable to the appropriate court of appeal.**
>
> La. R.S. 46:236.5(C).
>
> Thus, any party, within the time and manner established by court rule, may file an exception to the findings of the hearing officer. Rule 65(C) of the Family Court of the Fifteenth Judicial District provides in part as follows:
>
> 4. After the hearing officer makes the recommendation, the parties will have three (3) days, exclusive of legal holidays,

7

from the date of the hearing, to object to the hearing officer recommendation.

5. If the hearing officer's recommendation is not objected to within three (3) days, then the hearing officer's recommendation becomes a final order and may thereafter be presented to the court for signature.

*C.G.D.*, 782 So.2d at 1129-30.

The trial court in this case not only expanded on the previously signed judgment but accorded it no validity and confected an entirely new judgment. Louisiana Code of Civil Procedure Article 1951 provides:

On motion of the court or any party, a final judgment may be amended at any time to alter the phraseology of the judgment, but not its substance, or to correct errors of calculation.

In *Ast v. Ast*, 14-1282, p. 9 (La.App. 3 Cir. 4/1/15), 162 So.3d 720, 726, *writ denied*, 15-0869 (La. 6/5/15), 171 So.3d 952, this court held:

It is well settled that a final judgment may be amended only when the amended part takes nothing from or adds nothing to the original judgment. *See Tunstall v. Stierwald,* 01–1765 (La.2/26/02), 809 So.2d 916; *Sanderford v. Mason,* 12–1881 (La.App. 1 Cir. 11/1/13), 135 So.3d 745; *Thompson v. Falgout,* 09–1026 (La.App. 3 Cir. 3/10/10), 33 So.3d 410. Thus, the trial courts do not have the authority to substantively amend a judgment. *See also Krieg v. Krieg Bros. Terrazzo Co., Inc.,* 93–1065 (La.App. 3 Cir. 9/28/94), 645 So.2d 661, *writ denied,* 95–0152 (La.3/30/95), 651 So.2d 837.

In *Villaume v. Villaume*, 363 So. 2d 448, 450–51 (La.1978) the supreme court held that "[a]s a general rule, a final judgment is not subject to substantive amendment by the trial judge on his motion or motion of any party. In such an event, the proper recourse is a timely application for new trial or a timely appeal." In this case, neither party filed a motion for new trial and neither one appealed the original judgment awarding specified support payments and the federal tax credit. We find the trial court had no authority to declare the prior final judgment invalid. That is the province of this court upon proper review. The judgment making the hearing officer's recommendations the final order of the court was a final judgment when

8

the trial judge chose to ignore its validity. All that the trial court was called upon to do was to hold a hearing for the purpose of determining whether or not the cost of tuition at Harvest Time Academy was to be included in the award of child support. The prior final judgment already provided for the amount of support in either event and already determined the issue of which party could claim the tax exemptions. The new judgment rendered by the trial court changed the amount of support payments, changed the designation of which parent could claim the federal tax exemption and failed to address the sole issue before it, i.e., whether the cost of private tuition for the children attending Harvest Time Academy would be part of Carroll's child support obligation. We therefore vacate the judgment dated November 29, 2017 and remand the matter for rendition of a judgment on the issue properly before the trial court.

In his second assignment of error Carroll asserts the trial judge committed legal error by conducting direct examinations of Jessica and her witnesses. Louisiana Code of Evidence Article 614 provides:

**A. Calling by court.** The court, at the request of a party or if otherwise authorized by legislation, may call witnesses, and all parties are entitled to examine witnesses thus called.

**B. Questioning by court.** The court may question witnesses, whether called by itself or by a party.

**C. Objections.** Objections to the calling of witnesses by the court or to questioning of witnesses by it may be made at the time or at the next available opportunity when the jury is not present.

**D. Exception.** In a jury trial, the court may not call or examine a witness, except upon the express consent of all parties, which consent shall not be requested within the hearing of the jury.

Louisiana Code of Evidence Article 611 provides:

**A. Control by court.** Except as provided by this Article and Code of Criminal Procedure Article 773, the parties to a proceeding have the primary responsibility of presenting the evidence and examining the witnesses. The court, however, shall exercise reasonable control

9

over the mode and order of interrogating witnesses and presenting evidence so as to:

(1)  Make the interrogation and presentation effective for the ascertainment of the truth;

(2)  Avoid needless consumption of time; and

(3)  Protect witnesses from harassment or undue embarrassment.

Likewise, under La.Code Civ.P. art 1631(A), "[t]he court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done." In *Martinez v. Martinez*, 17-74 (La.App. 3 Cir. 10/4/17), 228 So. 3d 764, this court rejected a similar assertion concerning the trial judge's questioning of a witness who was a party to the litigation and was represented by counsel. We observed in *Martinez*:

> Under Louisiana Code of Evidence Article 614, a judge may question witnesses. Generally, a judge, in order to maintain the impartiality which proper trial technique demands, should be very careful, not only as to the number and type of questions propounded by him to witnesses, but also as to the manner in which they are propounded. *Texas Pacific–Missouri Pacific Terminal R. of New Orleans v. Welsh*, 179 F.2d 880 (5th Cir.1950); *Patin v. DeStevens*, 415 So.2d 1011 (La.App. 4th Cir.1982). In order to adjudicate a matter fairly, the trial court is well within the scope of its duty when it initiates questions from the bench. La. C.C.P. art. 1631; *Midyett v. Midyett*, 32,208, (La.App. 2nd Cir.9/22/99), 744 So.2d 669; *LaPierre v. Gibson*, 420 So.2d 990 (La.App. 4th Cir.1982), *writ denied*, 423 So.2d 1150 (La.1982); *Williams v. Western Preferred Casualty Insurance Company*, 465 So.2d 191 (La.App. 3rd Cir.1985). As noted by the Third Circuit in *Williams*:
>
>> [I]n a bench trial, as in this one, the dangers inherent in questions from the bench are greatly mitigated because there is no jury to confuse or mislead. The trial judge was merely enabling himself to better understand the crucial testimony of the claimant.

*Ledet v. Ledet*, 04-509, pp. 4-5 (La.App. 5 Cir. 3/29/05), 900 So.2d 986, 988 (quoting *Williams v. Western Preferred Cas. Ins. Co.*, 465 So.2d 191, 194 (La.App. 3 Cir. 1985)).

Although David claims that the trial court exceeded its authority by asking him thirty-one questions as opposed to the thirty questions asked by his own counsel, we find, by our own count, that the trial court asked approximately fifteen questions. The difference in numbers arises from the fact that David appeared at the hearing via Skype from Michigan and experienced difficulty in hearing the trial court's questions, which required the trial court to ask the same questions multiple times. No matter the difference in the number of questions, the trial judge, in this bench trial, certainly acted within her discretion by asking questions in order to clarify the evidence in her mind. *State v. Layssard*, 310 So.2d 107 (La.1975). Accordingly, we find no merit in this assignment of error.

*Martinez*, 228 So. 3d at 769.

We have reviewed the questioning of witnesses by the trial judge herein, and, although it is more lengthy and involved than usual, we find nothing improper in the judge's conduct of the hearing. We note that initially neither party was represented by counsel and throughout the proceedings Jessica remained unrepresented. The trial judge gave Jessica the opportunity to question witnesses. After Carroll retained counsel, the judge accorded that attorney every opportunity to cross examine witnesses or to call witnesses on behalf of Carroll. Carroll called no witnesses save for himself and rested his case after plaintiff's case ended. He testified under cross examination and chose not to testify any further after Jessica rested her case. Our review of the judge's questioning of witnesses, though admittedly extensive, does not support Carroll's assertion that the judge acted more as an advocate than a judge. We find the judge was circumspect in his questioning and instructions to witnesses. For these reasons, we find no merit in this assignment of error.

In his third assignment of error Carroll maintains that the trial court could not properly require the cost of a homeschooling program be made part of a party's child support obligation because La.R.S. 9:315.6 "does not mention nor provide for the inclusion of homeschool expenses." We first note that the parties agreed to send their children to Harvest Time Academy for participation in its homeschool program.

11

Carroll admits in his brief to this court that the evidence presented at the hearing by Jessica shows the program at Harvest Time Academy is considered by the Louisiana Board of Elementary and Secondary Education (BESE) to be a homeschool program. Louisiana Revised Statutes 9:315.6 provides in pertinent part:

> By agreement of the parties or order of the court, the following expenses incurred on behalf of the child may be added to the basic child support obligation:
>
> (1) Expenses of tuition, registration, books, and supply fees required for attending a special or private elementary or secondary school to meet the needs of the child.

Carroll asserts the statute is specific and provides only for inclusion of tuition in support obligations for "private elementary or secondary school." But this misquotes the statute as it specifically states such fees may be included in a support obligation "for attending *a special* or private elementary or secondary school." The comment following the statute also reveals that after 2001:

> Clarifying language was added to Paragraph (1) to specify the types of school expenses--tuition, registration, books and supply fees *required* for attending the school-permitted to be added to the basic child support amount, *but the necessity of showing that attendance at the special or private school was required to meet the "particular educational" needs of the child was eliminated.* The needs of the child met by the special or private school need not be particular educational needs but may include such needs of the child as the need for stability or continuity in the child's educational program.

La.R.S. 9:315.6, cmt. (2001) (emphasis added and in original).

Michelle Rupert, principal of Harvest Time Academy, testified that the school program at Harvest Time Academy is "a BESE-Approved Home Study Program." This program is a homeschooling method of education but instead of being conducted in the child's home, is conducted under the tutelage of teachers at Harvest Time. According to Principal Rupert, G.T. has attended the school for nearly five years and she has shown great improvement. Ms. Rupert further testified G.T. needs a lot of "extra help" and she is getting it at Harvest Time in the form of teachers with

a small student to teacher ratio, tutoring and summer school. She also testified and presented documentary evidence showing that both parents, Jessica and Carroll, signed the application for enrollment for G.T. at Harvest Time Academy in 2013. Likewise, she testified that J.T., now in the sixth grade at Harvest Time Academy, was also enrolled under the signature of both parents in 2015. The program at Harvest Time is approved by BESE. Both parents agreed to send their children to this school's homeschool program. We find no merit in this assignment of error.

For the reasons stated we vacate the trial court judgment and remand the matter for purposes of the entry of a judgment on the only issue that was before the trial court, i.e., whether the tuition for the children's attendance at Harvest Time Academy should be made part of the child support obligation and if so, the amount of arrearages to be paid by Carroll, if any. All costs of this appeal are divided equally between the parties.

**JUDGMENT VACATED. REMANDED.**